Kimberly STEPHENSON, by the Lawful Guardian of the Person and Estate of Kimberly Stephenson, Bert Parrack, Plaintiff,

v.

Thomas E. McCLURE, Defendant–Appellant,

and

Della Louise Killian, Administratrix of the Estate of Fred T. Killian, Deceased, Defendant–Respondent.

No. 11458.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 29, 1980.

Appellant's Motion for Rehearing and for Transfer Denied Sept. 26, 1980.

Application to Transfer Denied Nov. 12, 1980.

---

Gary R. Cunningham, Charles F. Kiefer, Jr., Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for defendant–appellant.

Kenneth H. Reid, Rodney E. Loomer, Turner, Reid, Duncan & Loomer, Springfield, for defendant respondent.

MAUS, Judge.

In this personal injury action one defendant (the appellant) settled with the minor plaintiff taking a general release. By his first amended cross claim, the appellant seeks to recover from the other defendant (the respondent) all or part of the amount paid by the appellant as consideration for the release. The trial court sustained the respondent's motion to dismiss the cross–claim. The appellant (settling defendant) has appealed, basing his right to recover upon the authority of *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978); hereafter referred to as *Whitehead and Kales.*

By her petition, the minor plaintiff alleged that she was riding in a southbound motor vehicle driven by the respondent's decedent when a northbound motor vehicle driven by the appellant collided with the vehicle in which she was riding. In one paragraph she charged the respondent's decedent with 11 acts of negligence, including driving on the wrong side of the road and humanitarian negligence. In a succeeding

paragraph, she charged the appellant with identical acts of negligence. She then alleged that as a result of the negligence of the respondent's decedent and the appellant "and each of them", she was seriously injured and prayed judgments against the defendants and each of them. Each defendant filed a general denial. The appellant then filed a cross-claim against the respondent. This cross–claim made reference to the parties and alleged that if both the appellant and respondent were found to be liable to the plaintiff, the respondent would be liable to the appellant "by way of contribution" for such part of the judgment as the jury may determine to have resulted from the negligence of the respondent. The cross–claim prayed for judgment in accordance with those allegations.

Subsequently, the plaintiff dismissed as to the respondent. The plaintiff's guardian then obtained judicial approval of a settlement of the plaintiff's claim "with defendant Thomas E. McClure" and a judgment for the amount of the settlement was entered against McClure, the appellant. The judgment of approval authorized the guardian to acknowledge satisfaction of the monetary judgment and to execute "an appropriate release". Upon the basis that the cross–claim was still pending, counsel for the respondent participated in the settlement hearing and established the intent of the settlement was to release all claims of the plaintiff, including her claim against the respondent. The guardian did acknowledge satisfaction of the monetary judgment and executed a release discharging the appellant and all others from liability by reason of the accident in question.[1]

The appellant then filed a first amended cross–claim against the respondent. This first amended cross–claim made general reference to the accident, incorporating the plaintiff's petition by reference and then made reference to the original cross–claim. It then alleged that the appellant entered into negotiations for the settlement of the plaintiff's claim; that the respondent declined to participate in those negotiations; and that those negotiations were successful and the plaintiff's claim was settled for a fair and reasonable amount. The first amended cross–claim then recited the judicial approval of the settlement and satisfaction of the monetary judgment and incorporated by reference the petition for approval, the judgment of approval and the release. It then alleged the respondent was negligent in the 11 respects that had been asserted in the plaintiff's petition. The first amended cross claim then charged that the plaintiff's injuries were the "direct and proximate result of the negligence of Fred T. Killian". It then concluded that the appellant was entitled to contribution from the respondent "for all or such part, portion or percentage of the amount paid to Kimberly Stephenson as corresponded to the part, portion or percentage of fault for the collision in question as the jury may determine to have resulted from an act or omission by Fred T. Killian." The first amended cross claim prayed for judgment in accordance with the latter allegations. The respondent filed a motion to dismiss the first amended cross–claim, citing four reasons why that motion failed to state a cause of action. The trial court sustained the motion without specifying the basis for its decision. The appellant did not seek to further amend his cross-claim.

■ In very general terms this appeal concerns the right of one party who has satisfied the claim of a third party to seek indemnity or contribution from another party. The terms "indemnity" and "contribution" are often used interchangeably. However, perhaps it is more appropriate to use the term "indemnity" in referring to a claim for 100 per cent reimbursement and the term "contribution" in referring to a

---

1. The respondent argued that the release in question did not name the respondent as a party released and the appellant had not established that the respondent was released citing *State ex rel. Normandy Orthopedics v. Crandall*, 581 S.W.2d 829 (Mo. banc 1979). However, the general intendment of the first amended cross-claim is that the respondent was released and the case will be considered on that basis.

claim for partial reimbursement.[2] Claims for indemnity or contribution may be distinguished upon many bases, for example, whether or not the claim arises from contract or whether or not the claimant has been subjected to vicarious liability. An important distinction is whether or not the claimant was in fact liable for the obligation that he satisfied. The general subject is covered under Topic III, Chapter III, Restatement of Restitution. The point of this discussion is to emphasize the fact that there are distinctions between the various types of claims for indemnity and/or contribution and to accord recognition to the fact that the prerequisites for the successful assertion of such a claim may vary according to the type of claim asserted. Therefore, it is necessary to carefully define and limit the issue to be decided in this case.

■ In his brief the appellant states: "The issue presented on appeal concerns the rights and liabilities between a settling tortfeasor and a non–settling tortfeasor for equitable indemnity under the rule announced by the Missouri Supreme Court in *Missouri Pacific Railroad Co. v. Whitehead and Kales*, 566 S.W.2d 466 (Mo. banc 1978)." The appellant has four "points relied on". Each point is prefaced by the following: "That the trial court erred in granting respondent's motion to dismiss, . . . for the reasons that said cross–claim is authorized by virtue of the Missouri Supreme Court ruling in *Mo. Pacific v. Whitehead*

*and Kales . . . .*". With that preface, in consecutive points appellant asserts that each of respondent's reasons one, two, three and four was not a proper basis for dismissal of the first amended cross–claim. As the issue has been clearly defined, it is not the duty, and indeed it would be improper, for this court to assume the position of an advocate and to search for any other theory upon which the cross–claim could be maintained.[3] Accordingly, this case will be decided upon the basis of whether or not the first amended cross–claim states a cause of action under the doctrine enunciated in *Whitehead and Kales.*

■ *Whitehead and Kales* introduced a fundamental change in Missouri law.[4] In very general terms, that case upon the "principle of fairness", established the doctrine of non--contractual indemnity or contribution upon the basis of relative fault between or among joint tortfeasors.[5] While this concept is an innovation in Missouri, the general doctrine is not novel in the jurisprudence of this country. It has been adopted in one form or another by decision or by legislation in numerous states.[6] Since the doctrine, whether established by decision or by statute, is based upon the principle of fairness, the statutes and decisions of these other states may be looked to for guidance in the implementation of the doctrine of *Whitehead and Kales.*[7]

---

**2.** 18 Am.Jur.2d Contributions § 2, pp. 7–9.

**3.** *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978); *State ex rel. Mayfield v. City of Joplin*, 485 S.W.2d 473 (Mo.App.1972).

**4.** The doctrine and many of the problems arising from its adoption are analytically discussed in the dissenting opinion of Judge Welliver in *Union Carbide Corporation v. Chemline Corporation*, 602 S.W.2d 188 (Mo. banc 1980). The decision has been reviewed in: 44 Mo.L.Rev. 691 (1979) and 48 U.M.K.C.L.Rev. 54 (1979). Articles concerning settlements under the doctrine are found in: 35 Mo. Bar J. 168 (1979); 35 Mo. Bar J. 323 (1979) and 36 Mo. Bar J. 235 (1980).

**5.** The definition of this term may present no small problem. Prosser on Torts, §§ 43 and 44, pp. 258–266 (3rd Ed. 1964). However as used

in reference to the subject at hand, the term does include tortfeasors whose separate but concurrent negligent acts constitute a cause of the injury in question.

**6.** See Uniform Contribution Among Joint Tortfeasors Act (U.L.A.) p. 59; *Royal Indemn. Co. v. Aetna Cas. & Sur. Co.*, 193 Neb. 752, 229 N.W.2d 183 (1975). Additional decisions are cited in *Whitehead and Kales.*

**7.** In *Roth v. Roth*, 571 S.W.2d 659 (Mo.App. 1978) the case was remanded for the apportionment of damages between a joint tenant who converted corporate stock and a broker who negligently allowed the conversion.

In *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferris*, 588 S.W.2d 489 (Mo. banc 1979) it was held that an employer could not be made a party to an action for contribution for covered injuries to its employee.

The respondent's first contentions are based upon the proposition that the doctrine of *Whitehead and Kales* does not extend a right of contribution to a joint tortfeasor who discharges a claim by settlement rather than after his liability has been established by judgment. It is true that in *Whitehead and Kales* the liability of the tortfeasor claiming contribution had been established by judgment. However, that case does not restrict the application of the doctrine to those circumstances. An argument, most compelling to those accustomed to the individualism of the past practice, is that one tortfeasor should not be permitted by his own action to involve another alleged tortfeasor in a settlement.[8] But, the fundamental right of the non–settling alleged joint tortfeasor to contest his liability and the extent of the plaintiff's damages can be preserved. They are preserved under rules which have been summarized as follows:

> Unless the statute granting a right of contribution requires it, one of several tortfeasors who have incurred a common liability need not wait until the injured person obtains a judgment against him or a joint judgment against him and his cotortfeasors, or even until suit is brought, but he may in good faith enter into a compromise with the injured person and satisfy the entire liability on the basis of the amount so fixed, without assuming the character of a volunteer or endangering his right to contribution. A joint tortfeasor thus called upon to discharge his equitable responsibility to his cotortfeasor who has settled the common liability with the injured person is not prejudiced by the fact that judgment has not first been entered in favor of the person injured. The joint tortfeasor from whom contribution is sought will still have his day in court to defend against liability and the reasonableness of the amount paid in settlement of the existing claim.

18 Am.Jur.2d Contribution § 51, pp. 73–75.[9]

These rules have been applied by the majority of jurisdictions recognizing the doctrine of contribution between or among joint tortfeasors.[10] To hold otherwise

---

In *Martinez v. Lankster*, 595 S.W.2d 316, 317 (Mo.App.1980) it was similarly held that a husband could not be made a party to an action for contribution for injuries during coveture to his wife. In so holding the court said: "This court is not to consider whether the relative fault of the parties should be determined, but rather must ascertain whether plaintiff's husband is amenable to a suit in this case."

In *Union Carbide Corporation v. Chemline Corporation*, 602 S.W.2d 188 (Mo. banc 1980), the court held that *Whitehead and Kales* did not control the issue of what language is required in an indemnity contract to permit the would–be indemnitee to be indemnified against its own negligence.

In *State ex rel. Stutz v. Campbell*, 602 S.W.2d 874 (Mo.App.1980) it was held that a general release given by the proposed third–party plaintiff for contribution to the proposed third–party defendant included not only a claim for damages but a claim for contribution and the releasee could not be joined as a third–party defendant.

Differing views concerning the implementation of *Whitehead and Kales* are found in the dissents in *Steinman v. Strobel*, 589 S.W.2d 293 (Mo. banc 1979).

**8.** "The argument against it is that the other defendant may take no part in the settlement, violently oppose it, and regard it as outrageous, and still be held liable for his share. It is for this reason that the statutes of several jurisdictions limit contribution to those against whom judgments have been rendered, which fix both liability and amount. Where there is no such provision, it is almost invariably held that one who settles without judgment can recover contribution. It is usually held, however, that in the contribution suit such a compromiser must sustain the burden of proof, not only as to his own liability to the original plaintiff, but also as to the amount of the damages and the reasonableness of the settlement." Prosser on Torts, § 47, p. 277.

**9.** In this opinion the court need not consider whether or not a settling party must "vouch in" or give a non–settling party notice of a proposed settlement and prospective claim for contribution as the pleadings establish that the respondent declined to participate in the settlement negotiations and the respondent does not raise that issue. On this subject see 18 Am. Jur.2d Contribution § 83, pp. 118–120; Annot. 34 A.L.R.2d 1101 (1954); *Morris v. Kospelich*, 206 So.2d 155 (La.App.1968).

**10.** *Federated Mut. Ins. Co. v. Gray*, 475 F.Supp. 679 (D.C.Mo.1979); *Zontelli Brothers v. Northern Pacific Railway Co.*, 263 F.2d 194 (8th Cir.

would be to apply the "principle of fairness" to discourage settlements. Accordingly, this court holds that the first amended cross–claim did not fail to state a cause of action because the appellant settled rather than paid the claim after a judgment had been rendered.

■ However, this statement of the applicable rules brings into focus the respondent's second contention. That contention is that the first amended cross–claim is deficient because it does not allege that the appellant was a joint tortfeasor, that is, he was liable to the injured party. It is fundamental that a pleading seeking relief must "contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief . . .". V.A.M.R. Civil Rule 55.05. The pleading must allege the factual elements a pleader must prove to prevail.[11] While it may seem anomalous to require a pleader to assert his own liability, that element is fundamental to the doctrine of *Whitehead and Kales.* That doctrine is based upon the premise that the party seeking contribution is or was liable to the injured party. "It should be borne in mind that the right to non–contractual indemnity presupposes actionable negligence of both parties toward a third party." *Whitehead and Kales,* supra, 566 S.W.2d at 468. It is a well–recognized rule that one seeking contribution as a joint tortfeasor must allege that he was a joint tortfeasor.[12]

■ This court has searched the first amended cross–claim in vain for some infer-ence or reasonable intendment that the appellant was liable to the injured party. The nearest approach to such an inference or intendment is the conclusionary statement and prayer that the appellant was entitled to contribution for all or part of the amount paid in settlement. But that ambiguous statement does not supply the deficiency.[13] This is particularly true considering other allegations of the first amended cross–claim. "[A] pleader may literally plead himself out of court . . . ." *Household Finance Corporation v. Avery,* 476 S.W.2d 165, 168 (Mo.App.1972). That is what the appellant has done by the allegations that the plaintiff's injuries were the "direct and proximate result of the negligence of Fred T. Killian".

The appellant complains that if he pleaded his own liability, he would be prejudiced in the defense of other actions arising from the same accident. Suffice it to say, if there is no means to avoid that result, a party who seeks the benefit of a doctrine of contribution, must nevertheless plead facts which invoke that doctrine.

The circumstances of this case are to be distinguished from those in *Fane v. Hootman,* 254 Iowa 241, 117 N.W.2d 435 (1962) on which the appellant relies. In that case the cross claim, filed while the principal action was pending, sought contribution or indemnity in the event in the principal action the cross claimant was found to be liable. In a prior case, *Allied Mutual Casu-*

1959); *Hartford Fire Ins. Co. v. Osborn Pl. & Htg.,* 66 Wis.2d 454, 225 N.W.2d 628 (1975); *Allied Mutual Casualty Company v. Long,* 252 Iowa 829, 107 N.W.2d 682 (1961); *Morris v. Kospelich,* 253 La. 413, 218 So.2d 316 (1969). The right to settle the entire claim is impliedly recognized in the Uniform Contribution Among Tortfeasors Act (U.L.A.) §§ 1(d), 3 and 4(b). *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, 94 A.2d 26 (1953); *Brockman Mobile Home Sales v. Lee,* 98 Idaho 530, 567 P.2d 1281 (1977).

11. *Scheibel v. Hillis,* 531 S.W.2d 285 (Mo. banc 1976); *Pillow v. General American Life Ins. Co.,* 564 S.W.2d 276 (Mo.App.1978).

12. "The basis of a third party action is a common liability to the plaintiff." *Martinez v. Lankster,* 595 S.W.2d 316, 318 (Mo.App.1980).

"[H]e must plead and prove among the other necessary allegations his own negligence, the negligence of the other tort–feasors, and their common liability." *Farmers Mut. Auto. Ins. Co. v. Milwaukee Auto. Ins. Co.,* 8 Wis.2d 572, 99 N.W.2d 746, 750 (1959); *Hartford Fire Ins. Co. v. Osborn Pl. & Htg.,* 66 Wis.2d 454, 225 N.W.2d 628 (1975); *Nationwide Mutual Ins. Co. v. Weeks Allen Motor Co., Inc.,* 198 S.E.2d 88 (N.C.App.1973); 18 Am.Jur.2d Contribution, § 102, p. 138.

13. For this purpose a prayer may not be considered a part of the pleading. *Household Finance Corporation v. Avery,* 476 S.W.2d 165 (Mo.App.1972).

*alty Company v. Long*, 252 Iowa 829, 107 N.W.2d 682, 684 (1961), a petition for contribution filed by one who settled a claim against an alleged tortfeasor was held insufficient because "the plaintiff did not plead that its insured was in fact negligent; only that the trier of fact might have found it to be so." In *Fane*, in holding the cross–claim sufficient the court observed: "The defendant then says if it is found by the trier of facts that we are concurring tort–feasors then in that event there is a right to contribution. The claim is based on what may happen in a proper judicial proceeding. It is not based as was plaintiff's claim in *Allied Mutual v. Long* on what might have happened." *Fane*, 117 N.W.2d p. 438. That distinction is applicable to this case.

This court does not reach the question of whether or not, under other circumstances and other theories, one exposed to liability may settle the claim and seek indemnity without pleading and proving his liability to the injured party.[14] It is also true that the doctrine of *Whitehead and Kales* cuts across the separate concepts of indemnity and contribution. It is also true, as the appellant contends, that opinion does not expressly prescribe any limits on the degree of fault that must be attributable to one claiming non–contractual indemnity or contribution. However, as stated, that doctrine does presuppose the liability of both parties to the plaintiff. An allegation of such liability is essential to state a cause of action under the joint tortfeasor doctrine of *Whitehead and Kales*. The judgment is affirmed.

BILLINGS, P. J., and PREWITT, J., concur.

---

14. Compare *Lane v. Geiger–Berger Assoc., P.C.*, 608 F.2d 1148 (8th Cir.1979) in which a subcontractor submitted a proposed settlement to the defendant architect with tender of defense if the settlement was not approved. Also see *Missouri Pacific R. Co. v. Rental Storage & T. Co.*, 524 S.W.2d 898 (Mo.App.1975); *Alamida v. Wilson*, 53 Haw. 398, 495 P.2d 585 (1972); *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973); *American Commercial Lines, Inc. v. Valley Line Co.*, 529 F.2d 921 (8th Cir. 1976).